**Giovanni BOROMEI, a/k/a Johnny Boromei, Jr., Johnny G. Boromei, Appellant,**

v.

**SUN BANK OF TAMPA BAY, Appellee.**

No. 88–617–CIV–T–10.

United States District Court, M.D. Florida, Tampa Division.

Oct. 27, 1988.

David Steen, Tampa, Fla., for appellant.

D. Lawrence Rayburn, Cason, Henderson, Morrison, Prevatt and Baker, Tampa, Fla., for appellee.

### ORDER

HODGES, Chief Judge.

This is an appeal of an Order entered on February 16, 1988,[1] by the Bankruptcy Court granting Sun Bank of Tampa Bay's (Sun Bank) motion for relief from the automatic stay.

The facts of this case are straightforward. Prior to the institution of any bankruptcy proceedings, Sun Bank filed a complaint in state court seeking to foreclose a mortgage which it held on the principal residence of the Debtor. On September 16, 1987, the state court entered a final judgment of foreclosure and scheduled a judicial sale of the mortgaged premises which was to take place on October 23, 1987. On October 22, 1987, however, the Debtor filed a Chapter 13 bankruptcy petition thus invoking the automatic stay provisions of the Bankruptcy Code and preventing the sched-

---

**1.** A motion for reconsideration was denied on    March 3, 1988.

uled sale of his home. On November 20, 1987, Sun Bank moved the Bankruptcy Court for relief from the automatic stay, pursuant to 11 U.S.C. § 362(d)(1), so that it could pursue its foreclosure proceeding pursuant to state law.

The Bankruptcy Court agreed with Sun Bank's position and, by Order dated February 16, 1988, granted Sun Bank relief from the automatic stay thereby permitting it to enforce its judgment of foreclosure by conducting a sale of the Debtor's residence.

In ruling that a debtor does not have the right under 11 U.S.C. § 1322(b) to cure a default and reinstate his mortgage subsequent to the entry of a final judgment of foreclosure, Judge Baynes specifically followed precedent in the Middle District's Bankruptcy Court [2] while noting that other courts had reached a number of conflicting results. Judge Baynes resolved the issue by applying Florida mortgage law which holds that once a foreclosure judgment is entered, the mortgage lien merges into the final judgment. Since he concluded that such merger had occurred in this case, Judge Baynes reasoned that "no arrearages exist which could be cured by the debtor." Bankruptcy Order of February 16, 1988, p. 5 *citing In the Matter of Venech,* 67 B.R. 56 (Bankr.M.D.Fla.1986); *In the Matter of Akins,* 55 B.R. 183 (Bank.M.D. Fla.1985). Sun Bank, therefore, was permitted to go forward with its foreclosure action.

While the Bankruptcy Court properly identified the issue for determination—the point at which a Chapter 13 debtor's right to cure a mortgage default and reinstate his mortgage terminates—the Court cannot agree with either the Bankruptcy Court's analysis or resolution of the issue. The relevant parts of the Bankruptcy Code are found in § 1322(b) and read as follows:

(b) ... the [Debtor's Chapter 13] plan may—

\* \* \* \* \* \*

(2) modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

(3) provide for the curing or waiving of any default;

\* \* \* \* \* \*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

11 U.S.C. § 1322(b).

Courts appear to be in agreement that the power to "cure any default" granted in § 1322(b)(3) and (b)(5) is not limited by the ban against "modifying" home mortgages in (b)(2) because "curing defaults" under (b)(3) or "curing defaults and maintaining payments" under (b)(5) are not modifications of claims. *See e.g., Matter of Clark,* 738 F.2d 869, 871–72 (7th Cir.1984); *In re Taddeo,* 685 F.2d 24, 27 (2d Cir.1982). Courts are divided, however, over the question of when a cure of a defaulted mortgage is possible (as distinguished from the right of redemption). In this case the Bankruptcy Court ruled that cure and reinstatement of the debtor's mortgage was no longer possible because under state law the mortgage had merged into the judgment of foreclosure. *Accord Matter of Skelly,* 38 B.R. 1000 (Bankr.D.Del.1984); *In re Maiorino,* 15 B.R. 254 (Bankr.D.Conn.1981). The Court believes that this reliance on state law to determine whether a debtor may cure a mortgage default under § 1322 of the Bankruptcy Code is misplaced.

While it is generally correct that even in bankruptcy proceedings property interests are defined by state law, this is true only "unless some federal interest requires a different result." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). By enacting § 1322(b), Congress has expressed such a federal in-

---

**2.** *Matter of Venech,* 67 B.R. 56 (Bankr.M.D.Fla. 1986) (Paskay, C.J.); *Matter of Akins,* 55 B.R. 183 (Bankr.M.D.Fla.1985) (Paskay, C.J.).

terest in the rehabilitation of individual debtors by allowing them to cure defaults in the payments of their mortgages. As the Second Circuit has noted, "Congress did not labor for five years over this controversial question only to remit consumer debtors—intended to be the primary beneficiaries of the new Code—to the harsher mercies of state law." *Taddeo, supra,* 685 F.2d at 25. By virtue of the Supremacy Clause of the United States Constitution, federal law controls this issue. U.S. Const. Art. 6, cl. 2; *See e.g., Grubbs v. Houston First American Savings Ass'n,* 730 F.2d 236, 241 (5th Cir.1984) (en banc).

■ The Court agrees with the Second Circuit's interpretation of § 1322(b) and finds it applicable here. The Second Circuit has held:

> When Congress empowered Chapter 13 debtors to "cure defaults," we think Congress intended to allow mortgagors to "deaccelerate" their mortgage and reinstate its original payment schedule.... [W]e think that the power to cure must comprehend the power to "de-accelerate." This follows from the concept of "curing a default." A default is an event in the debtor-creditor relationship which triggers certain consequences—here, acceleration. Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified. This is the concept of "cure" used throughout the Bankruptcy Code.... In short, "curing a default" ... means ... the event of default is remedied and the consequences are nullified. A state law to the contrary must fall before the Bankruptcy Code.

*Taddeo, supra* at 26–27 & 29. *Accord Clark, supra; Grubbs, supra; In re Johnson,* 29 B.R. 104 (Bankr.S.D.Fla.1983).[3]

Even so, while Chapter 13 debtors enjoy the right to cure their default and reinstate their mortgage, all courts agree that this right does not continue indefinitely and is lost at some point in the foreclosure process. *In re Glenn,* 760 F.2d 1428, 1435 (6th Cir.), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). Since § 1322(b) does not specify a clear termination point, the courts have been required to fashion a federal rule supplying such a date in the foreclosure process. The Court agrees with the decision and rationale of the Sixth Circuit in *Glenn, supra,* and, for the reasons announced by that court, selects the date of the foreclosure sale as the termination date for the debtor's exercise of his right to cure and reinstate his mortgage.

In this case the mortgaged property has not yet been sold at a foreclosure sale. Therefore, pursuant to § 1322(b)(5), the Debtor should be given an opportunity to present to the Bankruptcy Court a Chapter 13 plan providing for the de-acceleration and reinstitution of his mortgage. Whether any such plan should be approved, of course, is within the sound judicial discretion of the Bankruptcy Court.

Accordingly, the Order granting Sun Bank relief from the automatic stay is VACATED and the stay shall remain in effect. The case is REMANDED to the Bankruptcy Court for the Middle District of Florida for further proceedings consistent with this opinion.

IT IS SO ORDERED.

---

3. Section 1322(b)(5) restricts the right of cure to those claims "on which the last payment is due after the date on which the final payment under the plan is due." As a number of courts have held, the important date to consider is the date on which the last payment is due *under the de-accelerated note* rather than the date for the last payment after acceleration has occurred. *See e.g., Clark, supra* 738 F.2d at 874.